**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PAUL HENDERSON, | : | CIVIL NO: **1:CV-13-0590** |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Nealon) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| CAROLYN W. COLVIN, | : | |
| ACTING COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION**

## I.  PROCEDURAL HISTORY.

Plaintiff, Paul Henderson, filed, through counsel, a Complaint on March 4, 2013, appealing the final decision denying his applications for Social Security Disability Insurance Benefits and for Supplemental Security Income ("SSI"), under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§401-433, 1381-1383f. (Doc. 1).  Plaintiff filed his Complaint pursuant to 42 U.S.C. §405(g).  Plaintiff paid the filing fee. The Complaint named as Defendant Michael J. Astrue, former Commissioner of Social Security. As Defendant notes, the proper Defendant is now Carolyn W. Colvin, Acting Commissioner of Social Security.  (Doc. 11, p. 1 n. 1).

This Court has jurisdiction over this case pursuant to 42 U.S.C. §405(g) and 42 U.S.C. § 1383(c)(3).  *See Smith v. Astrue*, No. 10-CV- 1178, 2011 WL 1790055, *2 (W.D. Pa. May 10, 2011).

-1-

After being granted an extension of time, the Defendant filed an Answer to the Complaint on June 13, 2013. (Doc. 8). Defendant also filed the complete administrative record. (Doc. 9). On July 26, 2013, the Plaintiff filed his Brief in support of his Complaint. (Doc. 10). On August 22, 2013, the Defendant filed her Brief. (Doc. 11). Plaintiff did not file a Reply Brief.

Plaintiff Henderson, born on December 4, 1980 , filed applications for DIB and SSI,  on October 2, 2008, and on December 31, 2008, respectively, alleging disability due his back, left ankle and leg pain. Specifically, Plaintiff was diagnosed with a left ankle condition (tarsal tunnel syndrome) and a lumbar spine condition, *i.e*,  lumbago, and chronic L5 radiculopathy. Plaintiff indicated that he became unable to work due to his conditions on April 1, 2008. Plaintiff was 27 years old on the alleged disability onset date.  (TR 51-52, 69).[1]

Plaintiff stated that he worked until July 2007, when his employer company went out of business.  Plaintiff's previous work included forklift operator/material handler, grocery store clerk, and cook/cashier.    (TR 14).   Plaintiff met the insured status requirements of the Act through June 30, 2011. (TR 13). Plaintiff has not engaged in substantial gainful activity from his alleged onset date, April 1, 2008. Plaintiff's DIB and SSI applications were initially denied by the Agency on October 28, 2008.  (TR 60-66).  The Plaintiff filed a written request for a hearing. On September 9, 2010, a hearing was held before Administrative Law Judge ("ALJ") Edward Brady.  (TR 49).  Plaintiff, who at the time was 31 years old, testified at the hearing and

---

[1]We use "TR" for our citations to the administrative record, found at Doc. 9, followed by the  page number of the record.

vocational expert Jodie Darden also testified at the hearing.  (TR 389-414).  On October 6, 2010, the ALJ issued a decision denying Plaintiff's applications for disability benefits and finding that Plaintiff was not under a disability within the meaning of the Act from April 1, 2008, alleged disability onset date, through October 6, 2010, the date of the ALJ's decision. (TR 59).

The Plaintiff appealed the ALJ's decision to the Appeals Council.  On March 19, 2012, the Appeals Council remanded Plaintiff's case back to the  ALJ for further consideration of Plaintiff's claims for benefits. Specifically, the Appeals Council directed the ALJ to obtain additional evidence and update Plaintiff 's treatment records, to give further consideration to Plaintiff 's maximum RFC, and to obtain additional evidence from the vocational expert to clarify the effect of the assessed limitations on Plaintiff 's occupational base.   (TR 11).

On October 3, 2012,  ALJ Brady held an additional hearing.  Plaintiff testified at the supplemental ALJ hearing and vocational expert Patricia Chilleri also testified at the hearing. (TR 415-430).   On November 6, 2012, the ALJ issued another decision denying Plaintiff 's claims for benefits.  The ALJ found that Plaintiff was not under a disability within the meaning of the Act from April 1, 2008, alleged disability onset date, through November 6, 2012, the date of the ALJ's second decision. (TR 11-22).

The ALJ found that Plaintiff's severe impairments of status post left lower extremity (ankle) fracture with four open reduction internal fixation surgeries, multilevel lumbar disc bulge, left tarsal tunnel syndrome, and lumbago prevented Plaintiff from performing his past relevant work.  (TR 14 & 20). The ALJ found that Plaintiff 's mental impairment of depression was not severe.  (TR 14).   Additionally, the ALJ found that Plaintiff had the capacity to perform

less than the full range of light work treated as sedentary work.  (TR 15).

On November  30, 2012, Plaintiff appealed the ALJ's decision of November 6, 2012, to the Appeals Council.  The Appeals Council denied Plaintiff's appeal.  The Plaintiff then initiated the instant civil action in this federal Court appealing the final decision of the Defendant.  (Doc. 1).

For the reasons set forth below, we will recommend that the Plaintiff's appeal from the final decision of the Defendant Commissioner of Social Security denying his claims for DIB and SSI benefits be denied.

## II.    STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)*; Johnson v. Commissioner of Social Sec*., 529 F.3d 198, 200 (3d Cir. 2008).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999); *Johnson*, 529 F.3d at 200.  It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).

Furthermore:

[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).


## III.    DISABILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. § 404.1520.  *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  *See* 20 C.F.R. § 404.1520.

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work.  *See* 20 C.F.R. § 404.1520.

Here, the ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Act during the relevant time of this case, April 1, 2008, alleged disability onset date, through November 6, 2012, the

date of the ALJ's supplemental decision. (TR 11-22).  At step one, the ALJ found that the Plaintiff

met the insured status requirements of the Social Security Act through June 30, 2011.  (TR 13).

At step two, the ALJ concluded Plaintiff did not engage in substantial gainful work activity at any

time since April  1, 2008, the alleged onset date of his disability. (*Id.*).  At step three, the ALJ

concluded that the Plaintiff's physical impairments, namely, status post left lower extremity

(ankle) fracture with four open reduction internal fixation surgeries, multilevel lumbar disc

bulge, left tarsal tunnel syndrome, and lumbago, prevented Plaintiff were severe within the

meaning of the Regulations.  (TR 14 & 20). The ALJ found that Plaintiff 's mental impairment of

depression was not severe.  (TR 14).  In his first decision, the ALJ also found that Plaintiff 's

medical records had conflicting reference to whether Plaintiff had reflex sympathetic dystrophy

("RSD"), and that this impairment was not severe.  (TR 54).

At step four, the ALJ found that the Plaintiff did not have an impairment or combination

of impairments that   met or medically equaled one of the listed impairments.  (*Id.,* 15). *See* 20

C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  The ALJ considered Listings 1.00, *et seq*.,

including 1.03, for Plaintiff 's status post left lower extremity (ankle) fracture with four open

reduction internal fixation surgeries, multilevel lumbar disc bulge, left tarsal tunnel syndrome,

and lumbago.  (TR 15).

The ALJ also determined that the Plaintiff had the residual functional capacity ("RFC")

to perform less then the full range of light work[2] treated as sedentary work.[3] *See* 20 C.F.R. §§ 404.1567(b) and 404.1567.(a). (*Id.*, 15). Further, the ALJ found that the Plaintiff was capable of lifting and carrying up to 20 pounds occasionally and 10 pounds frequently, and of standing and walking for a total of 2 hours and sitting for 6 hours in an 8-hour work day.  The ALJ also found that the Plaintiff was limited to jobs that required no more than occasional bending, balancing, stooping, kneeling, crouching and crawling , and with no requirement to use ladders, ropes or scaffolds.   The ALJ further found that the Plaintiff could not perform work at unprotected heights or with dangerous machinery, and that he could not engage in jobs that involved the use of foot controls.  (TR 15).

At step four, the ALJ found that the Plaintiff was not capable of performing any of his past relevant work, *i.e.*, forklift operator/material handler, grocery stock clerk, and cook/cashier.  (*Id.*, 20). At step five, the ALJ found that considering the Plaintiff's age (27 at date of alleged disability onset), limited education, work experience and residual functional capacity, and based on the testimony of the vocational expert ("VE"), there were significant numbers of jobs in the national economy which the Plaintiff could perform, such as protective services worker, an information

---

[2]Light work involves lifting no more than 20 pounds occasionally with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §404.1567(b).

[3]Sedentary work is defined as follows: (a) *Sedentary work.*  Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §404.1567(a).

clerk, and an order clerk. *See* 20 C.F.R. 404.1569 and 404.1569(a). (*Id.*, 20-21). The ALJ

therefore concluded that the Plaintiff was not under a disability, as defined in the Act, at any

time from April 1, 2008, alleged disability onset date, through November 6, 2012, the date of

the ALJ's supplemental decision. (TR, 21-22). *See* 20 C.F.R.   § 404.1520(g).  Thus, Plaintiff 's

claims for DIB and SSI were denied.

## IV.     BACKGROUND.

The Plaintiff was born on December 4, 1980, and was 27 years old at the alleged onset

disability date, which classifies him as a younger individual pursuant to the Act. *See* 20 C.F.R.

404.1563. Plaintiff lives in a 2-story apartment by himself. Plaintiff has a limited education (10th

grade) and he is able to communicate in English.  Plaintiff mainly experienced pain his left leg

below the knee and his low back. At the time of his first ALJ hearing, September 9, 2010,

Plaintiff was not receiving treatment for his low back condition or his depression. Plaintiff had

received medication for about 2 months for his depression and, he received epidurals and

physical therapy for his back pain that did not help.  Plaintiff stated that his back pain was pretty

much constant.  Plaintiff was not taking any medication for his back pain and for his ankle.

Plaintiff was most comfortable lying and he stated that he could sit for about half an hour before

he had to stand up.  Plaintiff stated that he could stand for about 15-20 minutes before he had

to sit.   (TR 389-412).

Plaintiff had multiple surgeries (*i.e.*, four) for his left ankle after an accident, and stated

that he may require another one to remove hardware. Plaintiff received nerve block injections

for his ankle within the  2 months before his hearing, and he stated that the tarsal tunnel release

-8-

procedure did not help his condition and that his pain was constant.  Plaintiff stated that he was in the most pain with his ankle when standing and that it swells when he was standing.  Plaintiff drives but he has difficulty when he drives for longer than 15-20 minutes. Plaintiff cleans the two floors (upstairs and downstairs) of his apartment, but has problems doing it.  Plaintiff also cooks.  Plaintiff did not cook and clean as much as he used to due to his pain. Plaintiff stated that he can groom himself, take care of himself, shower and get dressed.  Plaintiff could weed wack outside of his apartment in intervals.  Plaintiff also stated that he played video games. Plaintiff also listens to the radio and CD's and, he reads.  Plaintiff was off of medications for his ankle for about 8 months.   Plaintiff was last taking Norcose and it caused him stomach problems. Plaintiff was also currently using Lidoderm patches for his ankle and he previously took Neurontin medication.   Plaintiff did not use a cane to walk.  (TR 389-412).

Plaintiff stated that he had difficulty with stairs and he fell several times when his leg gave out.  Plaintiff stated that he constantly experienced numbness and tingling in both of his legs but mainly is left leg. Plaintiff had problems with pain shooting down his leg but he was not yet diagnosed with RSD.  Plaintiff had difficulty walking on uneven surfaces.  Plaintiff had to lay down at midday for half hour to 45 minutes.  Plaintiff was sent to a pain clinic by his doctor and received block therapy but he did not get any results of pain relief from either treatment. Plaintiff stated that his source of income was from public assistance and that he had Section 8 housing.  (TR 389-412).

VE Darden also testified at Plaintiff's first ALJ hearing.  The ALJ posed hypothetical questions to the VE.  The ALJ  stated that he had a hypothetical person of the same age,

education and experience as Plaintiff, that  was capable of lifting and carrying up to 20 pounds occasionally and 10 pounds frequently, and could stand and walk for a total of 2 hours and sit for 6 hours in an 8-hour work day, but would need a sit/stand option at will.  The ALJ also found that the person could occasionally bend, balance, stoop, kneel, crouch and crawl , and could not use  ladders, ropes or scaffolds, could not perform work at unprotected heights or with dangerous machinery, and that he could not engage in jobs that involved the use of foot controls.  The VE stated that such a hypothetical person could not perform the past work of Plaintiff.  However, the VE stated that such a person could perform sedentary, unskilled work such as a surveillance system monitor, order clerk, and production finisher. (TR 412-413).

Plaintiff had a supplemental ALJ hearing on October 3, 2012, pursuant to the directive of the Appeals Council. The ALJ was directed to address certain medical evidence such as injections Plaintiff received and to determine what vocational grids apply. The ALJ was also directed to get an update on Plaintiff s medical evidence.  Plaintiff and VE Chilleri testified.  (TR 415-430).

Plaintiff was 31 years old at the time of supplemental ALJ hearing. Plaintiff was recently diagnosed with tarsal tunnel syndrome and non-neuritis of his left ankle.  Plaintiff was still living alone in an apartment but he moved to Vine Street in Scranton, PA.  Plaintiff had not worked since April 1, 2008, nor had he attempted to work since that date.  Plaintiff admitted that he had not received any medical care and treatment for about two (2) years.  Plaintiff was not taking any medications for his conditions.   Plaintiff performed physical therapy himself everyday.  Plaintiff stated that he had constant pain in his left ankle, and could only walk for 15

minutes or 2 blocks.  Plaintiff stated that he could stand 20 minutes before he had to sit since his ankle starts to swell, and that he had difficulty sitting due to his back condition.  Plaintiff 's doctor recommended pain medication but since Plaintiff took medication for over 3 years, even higher doses were not helping him.

Plaintiff was able to take care of himself, get dressed and perform household chores, but he stated that they take longer than normal to do. Plaintiff did not have anyone to help him with his chores.  Plaintiff does his laundry, cooking, and he drives but does not own a car.  Plaintiff stated that he could not carry the laundry basket due to his back condition and had to drag it or pull it.  Plaintiff's public assistance expired but he had Section 8 housing which covered all of living expenses.  Plaintiff received food stamps.  (TR 415-426).

Plaintiff stated that his tarsal tunnel syndrome had gotten worse and that the surgery for it was not successful.    Plaintiff 's last surgery on his ankle was the end of 2007, and he stated that he had a total of five surgeries on it.   (TR 415-426).

Plaintiff also stated that at least three times a day for 15-20 minutes, he had to sit with his leg elevated with a heat pack on it.  Plaintiff stated that he could only stand up for about half an hour and then his ankle swells. Plaintiff stated that rainy and cold weather affected his ankle condition.   (TR 415-426).

VE Chilleri also testified at Plaintiff's supplemental ALJ hearing.   The ALJ posed hypothetical questions to the VE.  The ALJ stated that he had a hypothetical person of the same age, education and experience as Plaintiff, that  was capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently, and could stand and walk for a total of 2 hours and sit

for 6 hours in an 8-hour work day, but would need a sit/stand option every 15 minutes.  The ALJ also found that the hypothetical person could occasionally bend, balance, stoop, kneel, crouch and crawl, and could not use ladders, ropes or scaffolds, could not perform work at unprotected heights or with dangerous machinery.  Lastly, the ALJ stated that the hypothetical person could not engage in jobs that involved the use of foot controls.  The VE stated that such a hypothetical person could not perform the past work of Plaintiff.  However, the VE stated that such a person could perform sedentary, unskilled work such as a protective service worker, information clerk and order clerk. (TR 428-429).

## V.    DISCUSSION.

As stated, the ALJ denied Plaintiff's claims for DIB and SSI. Plaintiff appeals to this federal Court the final decision of Defendant denying his claims for the stated benefits.  Plaintiff argues that substantial evidence does not support the ALJ's decision denying his claims for DIB and SSI. Plaintiff also contends that the ALJ erred in finding that his conditions did not meet or equal Listing 1.03.

"[The District] Court's review is plenary with respect to all questions of law." *Hansford v. Astrue*, 805 F.Supp.2d 140, 143 (W.D.Pa. 2011)(citation omitted).  "With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is 'supported by substantial evidence.'" *Id.*(citations omitted).  "The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record." *Id.*(citation omitted).  Rather, the Court must review the findings of fact and conclusions of the ALJ to determine whether they are supported by substantial evidence.  If the ALJ's findings of fact are supported by substantial evidence, they "shall be conclusive." *Id.*(citations omitted).  Thus, the

Court applies a "deferential standard of review." *Id*.(citations omitted).

In *Hansford v. Astrue*, 805 F.Supp.2d at 143-44, the Court stated:

> In order to establish disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

(Internal citations omitted).

Substantial employment is defined as "work activity that involves doing significant physical or mental activities." *See* 20 C.F.R. § 416.972.

Thus, Plaintiff must have an impairment which is expected to result in death or to have lasted or be expected to last at least for twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i); *Morales v. Apfel,* 225 F.3d 310, 315–316 (3d Cir.2000). Additionally, to receive DIB, a Plaintiff must also show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. §404.131(a).

In the instant case, the ALJ found that Plaintiff was under the retirement age and met the insured status requirements of the Social Security Act through June 30, 2011. However, Plaintiff argues that substantial evidence does not support the ALJ's finding that he was not disabled. Specifically, Plaintiff argues that substantial evidence does not support the ALJ's finding that he did not have an impairment or combination of impairments that meets or medically equals Listed impairment 1.03. Plaintiff also argues that the ALJ failed to properly explain why

he rejected Plaintiff's complaints of pain.

As mentioned, the relevant time period for this case is April 1, 2008, alleged disability onset date, through November 6, 2012, the date of the ALJ's supplemental decision. To establish that he is entitled to DIB benefits, Plaintiff must show that his impairment, or combination of impairments, and his inability to work have lasted, or are expected to last, for the required 12-month period. *See Henderson v. Astrue,* 2011 WL 6056896, *9 (W.D. Pa. Dec. 6, 2011)(citing *Barnhart v. Walton*, 535 U.S. 212, 217, 122 S.Ct. 1265 (2002)).

At step three of the evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments that are acknowledged as so severe as to preclude substantial gainful activity. 20 C.F.R. §416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1; *Burnett v. Comm. of SSA*, 220 F.3d 112, 119 (3d Cir. 2000). The purpose of the listing of impairments is to describe those impairments which are "severe enough to prevent a person from doing any gainful activity," regardless of age, education, or work experience. 20 C.F.R. §416.925(a). As such, the Commissioner explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). If a claimant's impairment meets or equals one of the listed impairments, the claimant is considered disabled per se, and is awarded benefits. 20 C.F.R. §416.920(d); *Burnett*, 220 F.3d at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, Plaintiff bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." *Sullivan*, 493 U.S. at 531; 20 C.F.R. §416.920(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed

impairment is not sufficient. *Id.*

At step three, the ALJ concluded that Plaintiff Henderson's physical impairments, namely, status post left lower extremity (ankle) fracture with four open reduction internal fixation surgeries, multilevel lumbar disc bulge, left tarsal tunnel syndrome, and lumbago, were severe within the meaning of the Regulations. At step four, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. The ALJ considered, in part, Listing 1.03 for Plaintiff's ankle impairment. The ALJ also found that Plaintiff had not engaged in substantial gainful employment since the alleged onset date.

Plaintiff argues that substantial evidence does not support the ALJ's determination that his severe left ankle physical impairment did not meet Listings 1.00, *et seq.,*the musculoskeletal listings. Plaintiff points out that he had four surgeries on his left ankle and, he claims that he was *per se* disabled due to his ankle condition. Defendant states that "because Plaintiff fails to present any evidence that he had an inability to ambulate effectively during the relevant period, his argument must fail." (Doc. 11, p. 14). As Defendant recognizes, Plaintiff has the burden of proving that he meets each of the requirements of a Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Defendant correctly states, Listing 1.03 "requires surgical arthrodesis of the ankle [a major weight bearing joint]: with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset. 20 C.F.R. p.t 404, subpt. P, app. 1, Listing §1.03." (*Id.*, p. 15). *See Roberts v.* Astrue, 2009 WL 3183084, *7 (W.D.Pa. Sept. 30, 2009). Ineffective ambulation includes, "the inability to walk

without the use of a walker, two crutches or two canes; the inability to use standard public transportation; the inability to carry out routine ambulatory activities, such as shopping and banking; and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." *Id.(citing* 20 C.F.R. pt. 404, subpt. P, app. 1, §1.00B2b(2)).

Initially, we find that the ALJ reviewed Plaintiff 's medical records during the relevant time period, and stated that the records "through 2010 indicate pain, injection therapy, and medication; but specifically do not indicate problems with ambulation ... ." (TR 18 & 53). In his second decision, the ALJ also stated that "[Plaintiff] counsel's arguments [that Plaintiff met] listing 1.03 are unsupported by the record in this case given [Plaintiff's] effective ambulation and medical evidence indicating [Plaintiff] was able to be weight bearing to tolerance shortly after his surgeries." (TR 15).  The ALJ  considered the records of Plaintiff 's podiatrists as well as Dr. Horchos for Plaintiff's back pain, and found that they indicated Plaintiff was ambulatory. (TR 17-18).

We agree with Defendant that "there is no evidence that [Plaintiff] suffered from an inability to ambulate effectively for a period of 12 months." (Doc. 11, p. 16).  As mentioned, Plaintiff stated during his first ALJ hearing that he did not use a cane to walk, and that he lived in a 2-story apartment with stairs.  Also, after Dr. Kobylus, one of Plaintiff 's treating podiatrists, performed surgery to remove hardware from Plaintiff's left ankle, Plaintiff attended physical therapy at Green Ridge Physical Therapy.  On June 16, 2008, it was noted that Plaintiff did not use an assistive device to walk.  (TR 219).  On July 14, 2008, it was noted that Plaintiff had increased pain when he walked a lot up and down hills and on uneven terrain.  (TR 223). Plaintiff was also found to be able to ambulate during his doctor visits and his gait was normal.

(TR 247-248 (March 17, 2009), 250-251 (February 18, 2009), 253-254 (December 30, 2008), 256-257 (November 26, 2008, Plaintiff gait was normal)).   In particular, when Plaintiff was attending the Scranton Temple Residency Program from November 2008 through March 2009, it was consistently noted that he was ambulatory.   (TR 247, 250, 253).

During the second ALJ hearing, Plaintiff stated that he could walk for 15 minutes or 2 blocks, and that he could stand for 20 minutes before he had to sit.  Also, as discussed, Plaintiff admitted during both hearings that he engaged in many activities of daily living as he lived by himself in his apartment and cared for himself. At the first ALJ hearing, Plaintiff testified that he cleans both floors (upstairs and downstairs) of his apartment, but had problems doing it.  Plaintiff also cooks. Plaintiff stated that he could groom himself, take care of himself, shower and get dressed.  Plaintiff could weed wack outside of his apartment in intervals.  Plaintiff also stated that he played video games, listens to the radio and CD's and, reads.  Plaintiff stated that he did not use a cane to walk.  (TR 389-412).   When he testified at the second ALJ hearing, Plaintiff stated that he was still able to take care of himself, get dressed and perform household chores, but he stated that they took longer than normal to do. Plaintiff did not have anyone to help him with his chores.  Plaintiff stated that he did his laundry, cooking, and that he drives.  Plaintiff stated that he could not carry the laundry basket due to his back condition and had to drag it or pull it. (TR 415-426).

As stated above, "this Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record." *Weimer v. Astrue*, No. 2:08-CV-412, 2009 WL 563932, *3 (W.D.Pa. Mar. 5, 2009)(citations omitted).  Rather, [t]he Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial

evidence." *Id*. (citations omitted).

Based on the above, we find that substantial evidence supports the ALJ's finding that Plaintiff did not meet Listing 1.03 and, that Plaintiff did not experience ineffective ambulation for a period of 12 months. *See Roberts, supra*.

Plaintiff also argues that the ALJ failed to properly explain why he rejected Plaintiff's complaints of pain. Plaintiff contends that there was ample evidence to support his complaints of pain. Plaintiff indicates that the ALJ erred with respect to his RFC finding and that the ALJ failed to consider all of his limitations.  Plaintiff argues that his testimony and statements belie the ALJ's RFC finding.   Plaintiff relies, in part,  on his testimony and statements to challenge the ALJ's RFC assessment.  When the Court reviews  the ALJ's decision, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997)(citing *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir.1991)("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.")).  Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole.  *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

As stated, the ALJ determined that the Plaintiff had the RFC to perform to perform less then the full range of light work  treated as sedentary work. *See* 20 C.F.R.  §§ 404.1567(b) and 404.1567.(a).  (TR 15). Further, the ALJ found that the Plaintiff was capable of lifting and carrying up to 20 pounds occasionally and 10 pounds frequently, and of standing and walking for a total

of 2 hours and sitting for 6 hours in an 8-hour work day.  The ALJ also found that the Plaintiff was limited to jobs that required no more than occasional bending, balancing, stooping, kneeling, crouching and crawling , and with no requirement to use ladders, ropes or scaffolds.  The ALJ further found that the Plaintiff could not perform work at unprotected heights or with dangerous machinery, and that he could not engage in jobs that involved the use of foot controls.  (TR 15).

The ALJ found that while Plaintiff's statements about his symptoms were supported by his medically determinable impairments, Plaintiff's statements about the intensity, persistence and limiting effects of his symptoms were not credible insofar as they were not consistent with the ALJ's RFC assessment. (TR 17).

Residual functional capacity is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm. of SSA*, 220 F.3d 112, 121 (3d Cir. 2000)(citations omitted).  The Court in *Burnett* stated that the ALJ must consider all evidence before him in making a RFC determination.  *Id.*  The *Burnett* Court further elaborated that, while the ALJ is permitted to weigh the credibility of the evidence, he is required to give some indication of the evidence which he rejects, as well as the reasons for discounting the evidence.  *Id*.  Thus, the ALJ must mention and refute some of the contradictory medical evidence before him.  *Id*.  *See also Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994); *Garibay v. Comm. of Social Sec.*, 336 Fed.Appx. 152, 156 (3d Cir. 2009)("In making an RFC determination, an ALJ must discuss both the evidence that supports his conclusion and the evidence that was rejected.")(citing *Burnett, supra; Cotter v. Harris*, 642 F.2d 700, 705-07 (3d Cir. 1981)).  The ALJ also must give the Plaintiff's subjective complaints "serious consideration," *Mason*, 994 F.2d at 1067, and make specific findings of fact, including credibility, as to Plaintiff's residual functional

capacity. *Burnett*, 220 F.3d at 120.

The ALJ made specific findings as to Plaintiff's RFC, and he discussed the evidence in the record. (TR 16-20).  We find that the ALJ properly considered Plaintiff's statements in light of the entire record, including the medical evidence.  We also find that the ALJ's RFC finding was supported by Plaintiff 's testimony at both hearings, detailed above, to the extent that the ALJ found it was credible.

Significantly, in the second ALJ hearing, Plaintiff stated that he was no longer taking medication and that he was no longer seeing anyone for therapy for his physical conditions.  In fact, the ALJ found that Plaintiff had received virtually no care for his physical impairments in approximately  two years.  Further, Plaintiff's only therapy was home physical therapy.   As Defendant states, "[t]he  ALJ properly found Plaintiff not fully credible given his description of his activities and significant lack of medical treatment for two years prior to the [second ALJ] hearing." (Doc. 11, p. 19).   The ALJ also stated that Plaintiff "had progressed to the point that he was working around the house with friends when he re-injured his ankle."  (TR 19).

Therefore, we find that the ALJ made the required specific findings of fact in determining Plaintiff's RFC and that his findings were supported by substantial evidence. *See Burnett*, 220 F.3d at 120.

Accordingly, we find that substantial evidence supports  the ALJ's decision that Plaintiff was not disabled.  Thus, we will recommend that Plaintiff's appeal be denied.

**VI.      RECOMMENDATION.**

Based upon the foregoing, it is respectfully recommended that the Plaintiff's appeal from the final decision of the Commissioner of Social Security denying his claims for DIB and SSI benefits, **Doc. 1,** be denied.

 s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: March 3,  2014**

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

PAUL HENDERSON,                :        CIVIL NO: **1:CV-13-0590**
                               :
    Plaintiff,                 :
                               :        (Judge Nealon)
       v.                      :
                               :        (Magistrate Judge Blewitt)
CAROLYN W. COLVIN,             :
ACTING COMMISSIONER OF         :
SOCIAL SECURITY,               :
                               :
                               :
    Defendant.                 :

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **March 3, 2014.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the
> magistrate judge, making his or her own determination on the basis
> of that record.  The judge may also receive further evidence, recall
> witnesses or recommit the matter to the magistrate judge with
> instructions.

_____Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: March 3, 2014**